826 F.2d 1063
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert T. IRVIN, Plaintiff-Appellant,
v.
STATE OF TENNESSEE; Clover Bottom Developmental Center;
and Wilbert Mitchell, Defendants-Appellees.
 No. 86-5110.
 United States Court of Appeals, Sixth Circuit.
 Aug. 20, 1987.
 
 Before CORNELIA G. KENNEDY and DAVID A. NELSON, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Irvin ("appellant") appeals the District Court's grant of summary judgment to the State of Tennessee and appellant's supervisor in this Title VII race discrimination case. Appellant, proceeding pro se, was a probationary employee at a state home for the mentally ill and was terminated allegedly for poor job performance. We affirm.
 
 
 2
 Appellant, who is black, was employed at the Clover Bottom Developmental Center ("Clover Bottom"), a Tennessee state institution for the mentally retarded, as a Developmental Technician I from December 3, 1983 to June 1, 1984. Appellant was a probationary employee responsible for the care and training of the residents assigned to him. Appellant filed a complaint alleging that Clover Bottom and Wilbert Mitchell, appellant's supervisor, ("appellees"), terminated his employment on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-2000e(17) (1982). Appellant sought reinstatement and back pay. Appellees responded that appellant was terminated because of misconduct and that Tennessee law permits probationary employees to be terminated if their performance does not meet the required standards. In its motion for summary judgment, appellees stated that appellant had been terminated for the following reasons: (1) he was tardy a total of 146 minutes during a five-week period in February and March, 1984 and had questionable unscheduled absences; (2) he abandoned his workplace on April 21, 1984, thirty minutes prior to the end of his shift after a disagreement with a fellow employee; (3) he permitted a patient at the facility under his supervision to wander off the facility and was unaware of the patient's absence until thirty minutes later, the time when the patient was returned by other employees; (4) he wrote a letter to the superintendent of the facility stating that he did not wish to submit a shift change form despite his repeated complaints about the shift he was then working; and (5) he refused to remove waste material from a patient's room on April 20, 1984.[1] Appellees also noted that Wilbert Mitchell and Marguerite Lewis, the person who implemented Mitchell's recommendation that appellant be terminated, were black and harbored no discriminatory animus against appellant.
 
 
 3
 On June 19, 1985, the District Court appointed counsel to represent appellant and advise the court and appellant whether the suit had merit. This attorney filed a motion to hold in abeyance appellee's motion for summary judgment because counsel was unable to complete the investigation of the case before appellant's response was due. The court granted this motion and gave counsel an additional forty-five days in which to respond. On October 1, 1985, the District Court granted appellee's motion for summary judgment and dismissed appellant's complaint apparently because there had been no response to appellees' motion for summary judgment before the forty-five day deadline. On October 11, 1985, appellant's counsel filed a motion to alter or amend the summary judgment order. Included in this motion was a report and counsel's affidavit stating that he reviewed the facts of the case and concluded that such facts were insufficient to allow appellant to prevail in his action.[2] He further requested to be relieved from the case because he believed that further prosecution of the action could render him liable for sanctions under Fed.R.Civ.P. 11. Nevertheless, counsel believed that summary judgment was inappropriate and that the court should dispose of the case based upon counsel's report that accompanied the motion.
 
 
 4
 On October 17, 1985, the court rescinded its grant of appellee's motion for summary judgment to appellees and reinstated the case to the docket. The court relieved counsel from the case and granted appellant thirty days in which to file counteraffidavits and demonstrate to the court that there was a genuine issue of material fact for determination at trial. Otherwise, the court stated, summary judgment would be granted to appellees. Appellant responded by submitting an unsworn "Argument" alleging that the facts were always twisted by Mitchell when it came to probationary employees. He also contended that many problems were caused by Mrs. Foster, another black employee in his unit. Finally, appellant alleged that a while employee received a technician position on the first shift for which appellant was more qualified. Appellant requested $1,000,000 in damages. The District Court recognized that pleadings in pro se cases must be construed liberally but granted summary judgment to appellees and dismissed appellant's complaint with prejudice. Appellant appealed.
 
 
 5
 In a disparate treatment case, such as the present action, the plaintiff must persuade the court that he or she has been the victim of intentional discrimination. See, e.g., Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981). The primary factual issue is "[whether] the defendant intentionally discriminated against the plaintiff," and whether "the employer ... treat[s] 'some people less favorably than others because of their race, color, religion, sex, or national origin.' " United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983) (quoting Burdine, 450 U.S. at 253 and Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978) (quoting International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977))). In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court enunciated a tripartite test to be used in disparate treatment cases: (1) the plaintiff must prove a prima facie case; (2) the defendant must offer a legitimate, nondiscriminatory reason for its actions; and (3) the plaintiff must establish that the defendant's proffered explanation is a pretext to conceal an illegal motive.[3] The McDonnell Douglas Court stated that plaintiffs may establish a prima facie case of racial discrimination by showing that they are within a protected class, that they are qualified for the job despite being rejected, and that after this rejection, the employer continued to seek applicants from persons with plaintiffs' qualifications. Id. at 802.[4]
 
 
 6
 The Sixth Circuit has recently applied this test in a discharge setting. In Shah v. General Electric Co., 816 F.2d 264 (6th Cir.1987), the Court stated that in order to establish a prima facie case:
 
 
 7
 A plaintiff must show " that he is a member of a class entitled to the protection of the Civil Rights Act, that he was discharged without valid cause, and that the employer continued to solicit applications for the vacant position." Failure to prove any one of these elements by a preponderance of the evidences mandates a dismissal of the plaintiff's suit.
 
 
 8
 Shah, 816 F.2d at 268 (quoting Morvay v. Maghielse Tool & Die Co., 708 F.2d 229, 233 (6th Cir.), cert. denied, 464 U.S. 1011 (1983) (citation omitted)). The Shah Court also stated that "[t]he central inquiry in evaluating whether the plaintiff has met his initial burden is whether the circumstantial evidence presented is sufficient to create an inference [of discrimination]." Shah, 816 F.2d at 268 (quoting B. Schlei & P. Grossman, Employment Discrimination Law 247 (Supp.1983-84)).[5] To make out a prima facie case, the plaintiff must prove the necessary elements "by a preponderance of the evidence." Burdine, 450 U.S. at 253.
 
 
 9
 A party seeking summary judgment has the burden of showing conclusively that no genuine issue of material fact exists. Lenz v. Erdmann Corp. 773 F.2d 62, 63 (6th Cir.1985); Fed.R.Civ.P. 56(c). Although summary judgment is generally an inappropriate tool for resolving claims of race discrimination because these cases involve questions of motive and intent, Locke v. Commercial Union Ins. Co., 676 F.2d 205, 207 (6th Cir.1982) (Jones, J., dissenting), summary judgment is appropriate if the plaintiff fails to raise a genuine issue of material fact as to the existence of a prima facie case. See, e.g., Locke, 676 F.2d 205; Shah, 816 F.2d 264 (affirming district courts' grant of summary judgment for defendants because plaintiffs failed to establish prima facie case of discrimination). Additionally, Fed.R.Civ.P. 56(e) provides that "[w]hen a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials [in his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial."
 
 
 10
 An examination of the record in the present case in a light most favorable to appellant reveals that appellant failed to raise a genuine issue of material fact as to the existence of a prima facie case of racial discrimination. In appellant's "Argument" filed before the court he disputes the allegations contained in Mitchell's affidavit, allegations indicating that appellant failed to perform his duties satisfactorily. Nevertheless, he does not contend that any of the actions taken by Mitchell or other employees of Clover Bottom that resulted in his termination were because of his race. Appellant believes that some of the actions taken by Mitchell and other employees were unfair to probationary employees, but he does not allege that these actions or policies were racially biased. The only allegation of disparate treatment in appellant's complaint and "Argument" relate to a white employee being permitted to work the day shift despite the fact that he applied for a transfer to this shift and was more qualified. This allegation, however, does not relate to appellant's termination from Clover Bottom.
 
 
 11
 Because appellant failed to set forth any facts indicating his termination was racially motivated, and presented no evidence to create an inference of racial discrimination, the judgment of the District Court is AFFIRMED.
 
 
 
 [1]
 Appellant received a written reprimand for allowing the patient to leave Clover Bottom and received a corrective written communication from his supervisor for leaving his workplace thirty minutes before the end of his shift. The state also attached to its motion for summary judgment appellant's time report that documented his large number of absences
 
 
 [2]
 Counsel believed that appellant's action was without merit because appellant was a probationary employee and had been informed in writing about his unsatisfactory performance. Additionally, counsel noted that Clover Bottom's records did not reveal a pattern of inequality on the basis of race and that other black employees at the facility to whom appellant compared himself were not terminated
 
 
 [3]
 Although McDonnell Douglas was a failure to rehire case, the Supreme Court has applied the McDonnell Douglas tripartite analysis in a discharge case. Burdine, 450 U.S. 248
 
 
 [4]
 The Supreme Court in a case decided after McDonnell Douglas emphasized that the prima facie inquiry "was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." Furnco Const. Corp. v. Waters, 438 U.S. 567, 577 (1978)
 
 
 [5]
 According to the Supreme Court, a prima facie case "raises an inference of discrimination only because we presume [the employer's] acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Furnco, 438 U.S. at 577