Josie Nell **JACKSON** Plaintiff

v.

**TEXAS FOREST SERVICE** Defendant

**No. CIV.A. 9:00CV218.**

United States District Court,
E.D. Texas,
Lufkin Division.

Oct. 12, 2001.

Curtis B. Stuckey, Stuckey Garrigan &
Castetter, Nacogdoches, TX, for Plaintiff.

Jeff A. Armstrong, Attorney General's Office, General Litigation Division, Austin, TX, for Defendant.

## MEMORANDUM and ORDER

COBB, District Judge.

Before the court is Defendant's Motion for Summary Judgment [Dkt # 14], and the court having reviewed the motion and response on file is of the opinion that the motion be GRANTED.

On September 6, 2000, the plaintiff filed suit in federal court claiming she was denied employment because of her disability and race pursuant to the Rehabilitation Act of 1973, the Americans with Disability Act, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964. The plaintiff voluntarily dismissed her claim under the ADA because a recent Supreme Court decision held the Eleventh Amendment barred such a claim. On August 1, 2001, the defendant filed this motion for summary judgment claiming Jackson's discrimination claims have no merit and that the § 1981 and Rehabilitation Act claims are barred by the Eleventh Amendment.

### Background

The pleadings, depositions, and affidavits filed with the court establish the following: Josie Nell Jackson ("Jackson"), the plaintiff, is an African American woman who has been confined to a wheelchair since early childhood. Texas Forest Service ("TFS"), the defendant, is a state agency connected with Texas A & M University.

In February of 2000, TFS's Lufkin facility had employment openings for three positions: receptionist, clerk, and accounting assistant. Jackson applied for the receptionist position. Jackson spent twenty years with the United States Forest Services as a receptionist, switchboard operator, and property accounting clerk. Jackson contends this experience made her particularly well-qualified for TFS's receptionist position.

TFS appointed a six-person hiring team to fill the three positions. When an application came in, a clerk would remove the Equal Employment Opportunity data form (the only part of the application packet that asked for the applicant's race and this form was never given to the hiring team) and placed any cover letters and resumes that accompanied the application inside the application booklet. The hiring team separated the applications by position based on the applicant's answer to the question: "Specifically, which job number and/or title interests you?" which was located on the front of the application packet. Jackson answered "clerical" to this question, which the hiring team took to mean "clerk," and so put her application in the clerk category. Jackson was called for an interview. TFS thought it would be interviewing Jackson for the clerk position, while Jackson thought the interview was for the receptionist position.

Although Jackson's cover letter accompanying her application clearly indicated she sought the receptionist position, TFS asserts it mistakenly placed Jackson's application in the pile of applicants seeking the clerk position. All receptionist interviews were scheduled for February 29 or March 3, 2000. Jackson's interview date was set for March 7, 2000. TFS offered the receptionist position to Ms. Judy Smith ("Smith"), a non-minority, on March 6, but Smith requested some time to think about the offer. Because Smith had not accepted the offer when Jackson arrived on March 7, the person in charge of interviewing for the receptionist position was willing to interview Jackson for the job. Later in the day on March 7, Smith accepted the offer and then two letters were drafted and sent out on March 8: a letter to Smith offering the receptionist position

and a form letter to all the other unsuccessful applicants, including Jackson.

### Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure allows a court to grant summary judgment on issues presenting no genuine issue of material fact. Summary judgment is proper when the movant is able to demonstrate that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Col., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A fact is material if it might affect the outcome of a case under the governing substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. It is unnecessary for the movant to negate elements of the nonmovant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885–86, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

Once the material facts are assessed, the court must determine whether the evidence reveals the presence of genuine factual issues. A genuine issue exists when, in the context of the entire record, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir.1994). However, this favorable presumption for the non-

movant exists only when the non-movant presents an actual controversy of fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).

Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate. *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir.1997). In doing so, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, and unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *Id.* (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505).

■ Summary judgment is generally considered an inappropriate means of resolving employment discrimination claims because they often represent "nebulous questions of motivation and intent." *Hayden v. First National Bank*, 595 F.2d 994, 997 (5th Cir.1979); *EEOC v. Southwest Texas Methodist Hospital*, 606 F.2d 63, 65 (5th Cir.1979), cert. denied, 445 U.S. 928, 100 S.Ct. 1314, 63 L.Ed.2d 761 (1980). Motivation and intent often are proved only "through circumstantial evidence; determinations regarding motivation and intent depend on complicated inferences from the evidence and are therefore peculiarly within the province of the factfinder." *Thornbrough v. Columbus & Greenville R. Co.*, 760 F.2d 633, 647 (5th Cir. 1985). However, if the defendant presents strong evidence of a legitimate, nondiscriminatory reason for its actions, and the plaintiff is unable to counter with additional evidence of pretext, summary judgment may be appropriate. *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir.1993).

### The Eleventh Amendment as a Bar to Jackson's Claims

■ TFS contends that the Eleventh Amendment bars Jackson's § 1981 and

Rehabilitation Act claims. In *Laxey v. Louisiana Board of Trustees,* the Fifth Circuit compared the Eleventh Amendment to a defensive lineman in football "barring all suits in law or equity against an unconsenting state" from continuing down field towards trial. 22 F.3d 621, 623 (5th Cir.1994). The Fifth Circuit has concluded that § 1981 contains no express waiver of the state's Eleventh Amendment immunity, and thus § 1981 claims against a state or state agency are barred by the Eleventh Amendment. *Sessions v. Rusk State Hosp.,* 648 F.2d 1066, 1069 (5th Cir. 1981).

TFS is a part of Texas A & M University and, therefore, is a state agency. In her complaint, Jackson states that TFS is a state agency. The State of Texas has not waived its sovereign immunity, thus Jackson's § 1981 claim is barred by the Eleventh Amendment.

Additionally, TFS contends that the Eleventh Amendment bars Jackson's Rehabilitation Act claim. Recent Supreme Court decisions have dramatically altered the landscape of Eleventh Amendment law. In *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) and *Bd. of Trustees of the Univ. of Alabama v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), the Supreme Court held that Congress did not validly abrogate the states' Eleventh Amendment immunity for claims brought under the Age Discrimination in Employment Act and the Americans with Disabilities Act, respectively. Using an analysis derived from the *Kimel* and *Garrett* decisions, TFS argues that the Eleventh Amendment bars claims brought under the Rehabilitation Act because, according to TFS, this act does not validly abrogate the states' Eleventh Amendment immunity. Although TFS makes a strong argument as to why the Eleventh Amendment should bar suits brought under the Rehabilitation Act, the Supreme Court has yet to scrutinize the Rehabilitation Act like it has the ADEA and the ADA, and this court decides not to rule on TFS's Eleventh Amendment defense as it applies to Jackson's Rehabilitation Act claims.

### Jackson's Title VII Claim

In order to overcome a motion for summary judgment in a Title VII case, a plaintiff must first establish, by a preponderance of the evidence, a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie case of discrimination under Title VII a plaintiff must show: 1) she is a member of a protected class, 2) she was qualified for the position she was denied, 3) she was not hired, and 4) after her rejection, the position remained open and the employer filled the position with a non-minority. *Id.* Once a prima facie case has been established, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* If the defendant can successfully articulate such a reason, the burden shifts back to the plaintiff to establish that the reason given was merely pretextual. *Id.* at 804, 93 S.Ct. 1817.

Under the above analysis, it is not apparent that Jackson has established a prima facie case, thereby avoiding summary judgment. Although Jackson has clearly established that she belongs to a racial minority, and although (particularly when viewed in a light most favorable to her), it can easily be assumed that Jackson was qualified for the job, and that she was not hired, it is not clear that the position remained open after her rejection. Assuming, however, that Jackson established a prima facie case, TFS articulated a legitimate and nondiscriminatory reason for its employment decision, that is that it had

already offered the position to someone other than Jackson and merely interviewed Jackson as a precaution in the event its prior offer was rejected.

■ After articulating a legitimate and nondiscriminatory reason for its employment decision, the burden shifts back to the plaintiff to show that the defendant's reason is in fact a pretext for discrimination. *Bodenheimer v. P.P.G. Industries, Inc.,* 5 F.3d 955, 957 (5th Cir.1993). At this point, the focus shifts to the ultimate question of whether the defendant intentionally discriminated against the plaintiff. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In order for there to be a jury question, however, "there must be a conflict in substantial evidence." *Grimes v. Texas Dept. of Mental Health & Mental Retardation,* 102 F.3d 137, 141 (5th Cir. 1996). "In the employment discrimination context, evidence is substantial if it is such as to allow a rational factfinder to make a reasonable inference that race was a determinative reason for the employment decision." *Id.* In the context of a motion for summary judgment, of course, the question is only whether a reasonable jury could find pretext for discrimination based on the evidence.

Jackson has failed to meet this burden. In her response to TFS's motion for summary judgment, the following four factors were the only evidence Jackson proffered to satisfy her burden: 1) Jackson's cover letter made it clear she was applying for the receptionist position, but she received a call for an interview after the interviewing for this position had allegedly concluded; 2) TFS failed to inform Jackson, at the time of her interview, that the position had been offered to someone else; 3) TFS mailed Jackson's rejection letter and Smith's offer letter on the same day; and 4) when Jackson later questioned the woman who interviewed her at TFS about why

she did not get the job, the interviewer responded that Smith had the best qualifications for the job (Jackson contends her twenty years of experience at a similar position with the U.S. Forest Service gave her the best qualifications).

Of these four factors only the second and third actually address TFS's justification for its employment decision. These factors do little to counter TFS's proffered reason, and thus do not create a jury question. In countering TFS's justification, "there must be a conflict in substantial evidence" to create a question for the jury. *Grimes,* 102 F.3d at 141. Jackson has failed to produce more than a scintilla of evidence that TFS's proffered justification was actually pretextual. It is unfortunate that TFS mishandled Jackson's application, thus allowing the job to be offered to Smith before Jackson even interviewed for it, but its mistake in classification of applications does not violate Title VII.

**Jackson's Rehabilitation Act Claim**

■ To establish a prima facie case under the Rehabilitation Act, Jackson must show: 1) she is disabled, 2) she is qualified under the Act, and 3) she was subject to discrimination based on her disability. *Tips v. Regents of Texas Tech Univ.,* 921 F.Supp. 1515, 1517 (N.D.Tex. 1996). After the plaintiff establishes a prima facie case, the burden shifting framework of *McDonnell Douglas* applies to Rehabilitation Act analysis. *Id.; Teahan v. Metro–North Commuter R.R. Co.,* 951 F.2d 511, 514 (2nd Cir.1991).

Again, Jackson has failed to counter TFS's justification for not hiring her with substantial evidence that the justification was merely pretextual. The only additional evidence Jackson brings forth to save her Rehabilitation Act claim is that the place where her interview was to be held was not wheelchair accessible. This evidence does nothing to counter TFS's justi-

fication that the reason Jackson was not hired was that TFS had already offered the receptionist position to someone else before Jackson interviewed with TFS.

### Conclusion

In accordance with Rule 56 of the Federal Rules of Civil Procedure, the court has determined that the Motion for Summary Judgment discussed above is appropriate under the circumstances involved in this case. It is, therefore,

ORDERED, that Defendant's Motion for Summary Judgment is hereby GRANTED.